IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIRIAM NATHAN,<br><br>                    Plaintiff,<br><br>     v.<br><br><br>SPIRIT AIRLINES, INC., EDWARD M. CHRISTIE, III, CARLTON D. DONAWAY, MARK B. DUNKERLEY, H. MCINTYRE GARDNER, ROBERT D. JOHNSON, BARCLAY G. JONES, III, CHRISTINE P. RICHARDS, and MYRNA M. SOTO,<br><br>                    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Miriam Nathan ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Spirit Airlines, Inc. ("Spirit" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Spirit and the Defendants.

**SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against Spirit and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed transaction (the "Proposed Transaction") between the Company and Frontier Group Holdings, Inc. ("Frontier").

2. On February 5, 2022, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Frontier. Pursuant to the terms of the Merger Agreement, Top Gun Acquisition Corp., a wholly owned subsidiary of Frontier, will merge with and into Spirit, with Spirit surviving the merger as a wholly owned subsidiary of Frontier. As a consequence of the merger, the Company's shareholders will receive $2.13 in cash for each share of Spirit common stock they own (the "Merger Consideration").

3. On May 11, 2022, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Proxy Statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Spirit and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Spirit shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, the owner of Spirit shares.

9. Defendant Spirit is incorporated under the laws of Puerto Rico and has its principal executive offices located at 2800 Executive Way, Miramar, Florida 33025. The Company's common stock trades on the New York Stock Exchange under the symbol "SAVE."

10. Defendant Edward M. Christie, III ("Christie") is and has been the President, Chief Executive Officer ("CEO") and a director of Spirit at all times during the relevant time period.

11. Defendant Carlton D. Donaway ("Donaway") is and has been a Spirit director at all times during the relevant time period.

12. Defendant Mark B. Dunkerley ("Dunkerley") is and has been a Spirit director at all times during the relevant time period.

13. Defendant H. McIntyre Gardner ("Gardner") is and has been the Chairman of the Board of Spirit director at all times during the relevant time period.

14. Defendant Robert D/ Johnson ("Johnson") is and has been a Spirit director at all times during the relevant time period.

15. Defendant Barclay G. Jones, III ("Jones") is and has been a Spirit director at all times during the relevant time period.

16. Defendant Christine P. Richards ("Richards") is and has been a Spirit director at all times during the relevant time period.

17. Defendant Myrna M. Soto ("Soto") is and has been a Spirit director at all times during the relevant period.

18. Defendant Dawn M. Zier ("Zier") is and has been a Spirit director at all times during the relevant time period.

19. Defendants Christie, Donaway, Dunkerley, Gardner, Johnson, Jones, Richards, Soto, and Zier are collectively referred to herein as the "Individual Defendants."

20. The Individual Defendants, along with Defendant Spirit, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21. Spirit provides airline services. It serves 85 destinations in 16 countries in the United States, Latin America, and the Caribbean. As of December 31, 2021, the company had a fleet of 173 Airbus single-aisle aircraft. It sells tickets through its call centers and airport ticket

counters, as well as online through spirit.com; and through various third parties, including online, traditional travel agents, and electronic global distribution systems. The company was formerly known as Clippert Trucking Company and changed its name to Spirit Airlines, Inc. in 1992.

## The Company Announces the Proposed Transaction

22.     On February 7, 2022, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> DENVER, Colo. and MIRAMAR, Fla., Feb. 07, 2022 (GLOBE NEWSWIRE) -- Spirit Airlines, Inc. ("Spirit") (NYSE: SAVE) and Frontier Group Holdings, Inc. ("Frontier") (NASDAQ: ULCC), parent company of Frontier Airlines, Inc., today announced a definitive merger agreement under which the companies will combine, creating America's most competitive ultra-low fare airline.
>
> Together, Frontier and Spirit expect to change the industry for the benefit of consumers, bringing more ultra-low fares to more travelers in more destinations across the United States, Latin America and the Caribbean, including major cities as well as underserved communities. The stronger financial profile of the combined company will empower it to accelerate investment in innovation and growth and compete even more aggressively, especially against the dominant "Big Four"[1] airlines, among others.
>
> William A. Franke, the Chair of Frontier's Board of Directors and the managing partner of Indigo Partners, Frontier's majority shareholder, noted that Indigo has a long history with both Spirit and Frontier, and is proud to partner with them in creating a disruptive airline. "We worked jointly with the Board of Directors and senior management team across both carriers to arrive at a combination of two complementary businesses that together will create America's most competitive ultra-low fare airline for the benefit of consumers."
>
> "We are thrilled to join forces with Frontier to further democratize air travel," said Ted Christie, President and CEO of Spirit. "This transaction is centered around creating an aggressive ultra-low fare competitor to serve our Guests even better, expand career opportunities for our Team Members and increase competitive pressure, resulting in more consumer-friendly fares for the flying public. We look forward to uniting our talented teams to shake up the airline industry while also continuing our commitment to excellent Guest service."
>
> "This combination is all about growth, opportunities and creating value for everyone – from our Guests to our Team Members to the flying public at large,"

said Mac Gardner, Chairman of the Board of Spirit. "We're a perfect fit – our businesses share similar values, including our longstanding commitment to affordable travel. At the same time, we have complementary footprints and fleets, including one of the youngest and greenest fleets worldwide. Together, we will be even more competitive for our Guests and our Team Members, and we are confident we can deliver on the benefits of this combination to consumers."

"Together, Frontier and Spirit will be America's Greenest Airline and deliver more ultra-low fares to more people in more places," said Barry Biffle, President and CEO of Frontier. "I couldn't be more excited for our team members, customers, partners, the communities we serve and our shareholders."

**Consumers Win With More Ultra-Low Fares to More Places**

The combined airline is expected to:

- Deliver $1 billion in annual consumer savings.
- Offer more than 1,000 daily flights to over 145 destinations in 19 countries, across complementary networks.
- Expand with more than 350 aircraft on order to deliver more ultra-low fares.
- Increase access to ultra-low fares by adding new routes to underserved communities across the United States, Latin America and the Caribbean.
- Deliver even more reliable service through a variety of operational efficiencies.
- Expand frequent flyer and membership offerings.

**Team Members Win With Expanded Opportunities and Increased Stability**

- By 2026 Spirit and Frontier expect to add 10,000 direct jobs and thousands of additional jobs at the companies' business partners.
- Given the growth of the combined company, it is expected that all current team members will have an opportunity to be a part of the combined airline.
- Team Members of the combined airline will have better career opportunities and more stability as part of the most competitive ultra-low fare airline in the United States.

**Sustainability Wins With America's Greenest Airline**

Frontier and Spirit will be America's Greenest Airline, providing nationwide access to sustainable and affordable air travel. The combined airline will have the youngest, most modern and fuel-efficient fleet in the United States, featuring the largest fleet of A320neo family aircraft of any airline in the country. The combined airline is expected to achieve over 105 seat miles per gallon by 2025.

**Shareholders Win With Superior Value Creation**

The combination of Spirit and Frontier is expected to deliver enhanced value to shareholders of both companies.

- On a combined basis, the company would have annual revenues of approximately $5.3 billion based on 2021 results.
- Once combined, Frontier and Spirit expect to deliver annual run-rate operating synergies of $500 million once full integration is completed, which will be primarily driven by scale efficiencies and procurement savings across the enterprise with approximately $400 million in one-time costs.
- The combined airline is expected to have a strengthened financial profile, with a cash balance of approximately $2.4[2] billion as of the end of 2021 on a combined basis.

Under the terms of the merger agreement, which has been unanimously approved by the boards of directors of both companies, Spirit equity holders will receive 1.9126 shares of Frontier plus $2.13 in cash for each existing Spirit share they own. This implies a value of $25.83 per Spirit share at Frontier's closing stock price of $12.39 on February 4, 2022, representing a premium of 19% over the February 4, 2022, closing price of Spirit, and a 26% premium based on the 30 trading-day volume-weighted average prices of Frontier and Spirit. The transaction values Spirit at a fully diluted equity value of $2.9 billion, and a transaction value of $6.6 billion when accounting for the assumption of net debt and operating lease liabilities.

Upon closing of the transaction, existing Frontier equity holders will own approximately 51.5% and existing Spirit equity holders will own approximately 48.5% of the combined airline, on a fully diluted basis, providing both Frontier and Spirit equity holders with substantial upside potential.

**Bringing Our Airlines Together – Governance and Timing to Completion**

The Board of Directors for the new airline will be comprised of 12 directors (including the CEO), seven of whom will be named by Frontier and five of whom will be named by Spirit. Mr. Franke will be Chairman of the Board of the combined company.

The merger is expected to close in the second half of 2022, subject to satisfaction of customary closing conditions, including completion of the regulatory review process and approval by Spirit stockholders. Frontier's controlling stockholder has approved the transaction and related issuance of shares of Frontier common stock upon signing of the merger agreement. The combined company's management team, branding and headquarters will be determined by a committee led by Mr. Franke prior to close.

**Merger Conference Call and Transaction Website Details**

Frontier and Spirit will conduct a live conference call and webcast to discuss the transaction at 6:30 AM MT / 8:30 AM ET today. To listen to the live call, please dial (800) 459-5346 or (203) 518-9544 and enter the participant code 4789568.

A live webcast of the conference call will be accessible through https://webinars.on24.com/messagebank/frontierspirit. The accompanying presentation slides will be available on both the Spirit website (https://ir.spirit.com) and the Frontier website (https://ir.flyfrontier.com), as well as www.EvenMoreUltraLowFares.com, a joint website dedicated to the transaction, at 6:15 AM MT / 8:15 AM ET. The webcast will also be available on the Spirit website (https://ir.spirit.com), the Frontier website (https://ir.flyfrontier.com) and www.EvenMoreUltraLowFares.com.

A replay of the call will be available until February 10, 2022, by dialing (888) 274-8331 or (402) 220-7332.

**Spirit and Frontier Fourth Quarter and Full Year 2021 Earnings Results**

In separate press releases today, Frontier and Spirit are also announcing earnings results for the fourth quarter and full year 2021. In light of today's proposed transaction, Spirit and Frontier have canceled their previously announced calls for Wednesday, February 9, 2022, at 10:00 AM ET and 4:30 PM ET, respectively.

**Advisors**

Citigroup Global Markets Inc. is serving as financial advisor and Latham & Watkins, LLP is serving as legal advisor to Frontier. Barclays and Morgan Stanley & Co. LLC are serving as financial advisors and Debevoise & Plimpton LLP is serving as legal advisor to Spirit.

### FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

23. On May 11, 2022, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

24. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's

shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

25. The Proxy Statement contains projections prepared by the Company's and Frontier's management concerning the Proposed Transaction, but fails to provide material information concerning such.

26. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

27. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

28. Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDAR; (ii) Adjusted Net Income; and (iii) Unlevered Free Cash Flows.

29. With respect to the Frontier projections, Frontier must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDAR; (ii) Adjusted Net Income; and (iii) Unlevered Free Cash Flows.

30. With respect to the Synergy projections, the Proxy Statement must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, EBIT Contribution.

31. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Financial Opinions

32. The Proxy Statement contains the financial analyses and opinion of Barclays Capital Inc. ("Barclays") and Morgan Stanley & Co. LLC ("Morgan Stanley") concerning the Proposed Transaction, but fails to provide material information concerning such.

33. With respect to Barclay's *Selected Comparable Company Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed in the analysis.

34. With respect to Barclays' *Discounted Cash Flow Analysis – Spirit Standalone*, the Proxy Statement fails to disclose: (i) the terminal value of Spirit as of December 31, 2026; (ii) the line items used by Barclays' to determine Spirit's projected after-tax unlevered free cash flows; (iii) the inputs and assumptions underlying Barclays' use of terminal value multiples ranging from 5.5x to 7.5x; (iv) the inputs and assumptions underlying Barclays' use of discount rates ranging from 9.0% to 11.0%; (v) Spirit's weighted average cost of capital; Spirit's estimated total debt as of December 31, 2021; (vii) cash as of December 31, 2021; and (viii) the implied total number of fully diluted Shares outstanding of Company common stock.

35. With respect to Barclays' *Discounted Cash Flow Analysis – Frontier Standalone*, the Proxy Statement fails to disclose: (i) the terminal value of Frontier as of December 31, 2026; (ii) the line items used by Barclays' to determine Frontier's projected after-tax unlevered free cash flows; (iii) the inputs and assumptions underlying Barclays' use of terminal value multiples ranging from 5.5x to 7.5x; (iv) the inputs and assumptions underlying Barclays' use of discount rates ranging from 9.0% to 11.0%; (v) Frontier's weighted average cost of capital; Frontier's estimated total debt as of December 31, 2021; (vi) cash as of December 31, 2021; and (vii) the implied total number of fully diluted Shares outstanding of Frontier common stock.

36. With respect to Barclays' *Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

37. With respect to Morgan Stanley's *Spirit Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the line items used to calculate the estimated present value of the stand-alone unlevered free cash flows of Spirit; (ii) the range of terminal values for Spirit as of December 31, 2026; (iii) the inputs and assumptions underlying Morgan Stanley's use of Adj. EV / EBITDAR multiples ranging from 5.5x to 7.0x; (iv) the inputs and assumptions

underlying Morgan Stanley's use of discount rates ranging from 9.8% to 11.4%; (v) Spirit's weighted average cost of capital; and (vi) the total number of fully diluted shares of Company common stock as of February 4, 2022.

38.     With respect to Morgan Stanley's *Frontier Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the line items used to calculate the estimated present value of the stand-alone unlevered free cash flows of Frontier; (ii) the range of terminal values for Frontier as of December 31, 2026; (iii) the inputs and assumptions underlying Morgan Stanley's use of Adj. EV / EBITDAR multiples ranging from 5.5x to 7.0x; (iv) the inputs and assumptions underlying Morgan Stanley's use of discount rates ranging from 9.8% to 11.4%; (v) Frontier's weighted average cost of capital; and (vi) the total number of fully diluted shares of Frontier common stock as of February 4, 2022.

39.     With respect to Morgan Stanley's *Spirit Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Morgan Stanley's use of Adj. EV / EBITDAR multiples ranging from 5.0x to 6.5x; (ii) the inputs and assumptions underlying Morgan Stanley's use of P / E multiples ranging from 9.0x to 11.0x; (iii) the inputs and assumptions underlying Morgan Stanley's use of a discount rate of 12.0%; and (iv) Spirit's then-current cost of equity.

40.     With respect to Morgan Stanley's *Frontier Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying Morgan Stanley's use of Adj. EV / EBITDAR multiples ranging from 5.0x to 6.5x; (ii) the inputs and assumptions underlying Morgan Stanley's use of P / E multiples ranging from 9.0x to 11.0x; (iii) the inputs and assumptions underlying Morgan Stanley's use of a discount rate of 11.1%; and (iv) Frontier's then-current cost of equity.

41. With respect to Morgan Stanley's *Discounted Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the trading price targets observed by Morgan Stanley for each of Spirit common stock and Frontier common stock; (ii) the sources thereof; and (iii) the inputs and assumptions underlying Morgan Stanley's use of discount rates of 12.0% for the Company and 11.1% for Frontier.

42. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

43. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

46. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

48. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

49. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.

The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

50. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

51. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

52. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

53. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

54. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of Spirit within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Spirit, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

56. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

58. In addition, as set forth in the Proxy Statement at length and described herein, the

Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 20, 2022          Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW PLLC**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*